**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **BRIAN K. MURRAY,**                )    | |
|                                                          ) | |
| **Plaintiff,**     ) | |
|                                                          )    | **CIVIL ACTION** |
| v.                                                    ) | |
|                                                          )    | No. 13-2173-JWL |
| **CAROLYN W. COLVIN,**         ) | |
| **Acting Commissioner of Social Security,**   ) | |
|                                                          ) | |
| **Defendant.**     ) | |
| _____ ) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security Disability (SSD) benefits and Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act).  Finding error in the Commissioner's evaluation of the medical opinions, the court ORDERS that the decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

**I.     Background**

Plaintiff applied for SSD and SSI, alleging disability beginning October 8, 2008.  (R. 13, 146-58).  In due course, Plaintiff exhausted proceedings before the Commissioner

and now seeks judicial review of the final decision denying benefits.  He alleges that the Administrative Law Judge (ALJ) erred in evaluating the record medical opinions, failed to provide a narrative discussion regarding the residual functional capacity (RFC) assessment as required by Social Security Ruling (SSR) 96-8p, and failed to properly define her terms, and that the ALJ's RFC is not supported by substantial record evidence.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920 (2011);[1] Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one

---

[1] The ALJ's decision in this case was issued on November 30, 2011.  Therefore, the court applies the regulations contained in 20 C.F.R. Parts 400-499, as of April 1, 2011.

through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds that remand is necessary because the ALJ erred in weighing the medical opinions. Because a proper weighing of medical opinions necessarily involves a new assessment of Plaintiff's RFC, and because each of the remaining errors alleged by Plaintiff relates to RFC assessment, the court will not address those errors in this opinion. Plaintiff may make his arguments in that regard to the Commissioner on remand.

## II.     Evaluation of the Medical Opinions

Plaintiff claims the ALJ erred in evaluating the opinion of his treating psychologist, Dr. Schemmel, because she failed to consider the global assessment of functioning (GAF) scores in Dr. Schemmel's treatment notes which were in the range of 41-50 and were consistent with the GAF scores assigned by other treating sources. He also claims error in that the ALJ purported to accord significant weight to the opinion of the nonexamining state agency psychologist, Dr. Blum, but rejected Dr. Blum's opinion that Plaintiff is moderately limited in the ability to interact appropriately with the general public without explaining her basis for doing so.

The Commissioner argues that the ALJ properly evaluated the medical opinions. With regard to Dr. Schemmel's opinion she argues that Dr. Schemmel's primary opinion was provided as a report of a consultative examination performed at the request of the state agency, and that Dr. Schemmel did not begin treating Plaintiff until thereafter, so that opinion, formed after only one examination, is not a treating source opinion within the meaning of the Act and the regulations.  She argues that the ALJ did not "omit" portions of Dr. Schemmel's opinion, because the GAF scores alleged by Plaintiff to be omitted were a part of Dr. Schemmel's treatment records and not a part of the medical opinion contained within the report of his consultative examination.  Moreover, she argues that GAF scores are designed to be used by practitioners in making treatment decisions, that the Commissioner has declined to endorse GAF scores for use in disability evaluation, and that the GAF scores cited by Plaintiff are contained within records of treatment providers who generally agree that Plaintiff does not have significant limitations in mental functioning.  Finally, she argues that the ALJ provided several reasons for discounting Dr. Shemmel's opinion in addition to the GAF score.

The Commissioner also argues that the ALJ properly explained why she accorded significant weight to Dr. Blum's opinion.  She acknowledges Dr. Blum's opinion that Plaintiff had moderate limitations in the abilities to carry out detailed instructions and to interact appropriately with the general public, and argues that the "ALJ assigned significant weight to the opinion because it was consistent with substantial evidence

showing that Plaintiff did not have limitations severe enough to preclude all work."

(Comm'r Br. 7-8).

### A.     The ALJ's Evaluation of the Medical Opinions

In her decision, the ALJ explained her evaluation of the opinions of Dr. Schemmel and Dr. Blum:

> In a consultative examination, Todd Schemmel PhD, who also is claimant's treating psychologist, observed appropriate eye contact and speech patterns but claimant was mildly anxious and depressed.  His thought processes were organized and goal directed and he evidenced his feelings of depression pessimism and worthlessness.  There was no problem with his thought content, however.  Claimant's attention and concentration, per digit recall, were poor.  His judgment was also poor but he showed good insight into his emotional functioning.  He denied any history of homicidal ideation or suicidal intent or plan.  In conclusion, Dr. Schemmel gave claimant a global assessment of functioning score of 53, representing a moderate impairment in functioning, and opined that claimant would be able to understand and follow only very simple instructions due to poor attention and concentration, emphasizing, however, that "his depression does not appear severe enough to prevent employment," but adding the caveat, "[He] does not currently appear to possess the cognitive adaptability or persistence necessary for sustained gainful employment."  ([Exhibit] 7F [(R. 436-40)])
>
> In considering the weight to accord the medical source statement from Dr. Schemmel, the undersigned notes that claimant has consistently engaged in work activity metal scrapping since his alleged onset date, and claimant in a Function Report (8E [(R. 241-52)]) has described a good level of activities of daily living, which the undersigned finds contradicts Dr. Schemmel's caution against sustained activity.  In addition, global assessment of functioning scores of 50-60, which appear in Dr. Schemmel [sic] treatment notes as well as the consultative examination report, show only a moderate impairment in functioning and should not be considered as demonstrating disability.  Therefore, the undersigned cannot give great weight to Dr. Schemmel's statement that claimant cannot engage in sustained gainful activity.  By comparison, the medical source statements of the State Agency medical consultant, Robert Blum PhD, set forth moderate limitations in

6

>some areas of functioning, which is [sic] consistent with the underlying global assessment of functioning scores but, [sic] as pointed out by Dr. Blum, is consistent with claimant's acknowledged good level of activities of daily living, including driving, shopping, doing household chores, using a computer and preparing meals, Therefore, the undersigned finds that Dr. Blum's medical source statements are entitled to significant weight as they are based on a consideration of the medical evidence as a whole.  (8F, 9F [(R. 441-58)])

(R. 19-20).

### B.    Standard for Evaluating Medical Opinions

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  Such opinions may not be ignored and, unless a treating source opinion is given controlling weight, all medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations. Id. §§ 404.1527(d), 416.927(d); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2011).  A physician or psychologist who has treated a patient frequently over an extended period of time (a treating source)[2] is expected to have greater insight

---

[2]The regulations define three types of "acceptable medical sources:"

"Treating source:"  an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship.  20 C.F.R. §§ 404.1502, 416.902.
"Nontreating source:"  an "acceptable medical source" who has examined the claimant, but never had a treatment relationship.  Id.
"Nonexamining source:"  an "acceptable medical source" who has not examined the claimant, but provides a medical opinion.  Id.

7

into the patient's medical condition, and his opinion is generally entitled to "particular weight." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003).  But, "the opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)).  However, opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2013) ("Giving Controlling Weight to Treating Source Medical Opinions").

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion.  Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citing SSR 96-2p).  The ALJ first determines "whether the opinion is 'well-supported by

medically acceptable clinical and laboratory diagnostic techniques.'" Id. at 1300 (quoting SSR 96-2p). If the opinion is well-supported, the ALJ must confirm that the opinion is also consistent with other substantial evidence in the record. Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

If the treating source opinion is not given controlling weight, the inquiry does not end. Id. A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." Id. Those factors are: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1301; 20 C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the regulatory factors, the ALJ must give reasons in the decision for the weight he gives the opinion. Id. 350 F.3d at 1301. "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

### C.      Analysis

Plaintiff is correct that the ALJ failed to consider the GAF scores assigned by Dr. Schemmel which are in the range of 41-50 and are consistent with the scores assigned by other treating sources.  As Plaintiff points out, Dr. Schemmel assigned a GAF score of 43, and a "Highest GAF (in past year)" of 55 to Plaintiff in his "Intake-Planning Session" with Plaintiff on March 15, 2010.  (R. 469).  Moreover, Plaintiff is also correct that on March 24, 2010 Dr. Mahar, a treating psychiatrist, assessed Plaintiff with severe, recurrent, major depressive disorder and a GAF score of 50 (R. 512); on June 15, 2011, Dr. Karim, another treating psychiatrist assessed a GAF score of 43 (R. 891); and on August 11, 2011, Plaintiff was assessed a GAF score of 50 by another treating psychiatrist, Dr. Skirchak.  (R. 896).  As Plaintiff points out, the Diagnostic and Statistical Manual of Mental Disorders provides that GAF scores in the range from 41 to 50 indicates "**Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)," whereas GAF scores in the range of 51-60 indicates only "**Moderate symptoms** . . . **OR moderate difficulty in social, occupational, or school functioning.**"  Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (hereinafter DSM-IV-TR) 34 (4th ed. text revision 2000). (emphases in original).

While the Commissioner is correct to point out that GAF scores are designed to be used by practitioners in making treatment decisions, and that the Commissioner has

10

declined to endorse GAF scores for use in disability evaluation, she ignores that the ALJ in this case specifically relied upon the GAF scores--both in discounting Dr. Schemmel's opinion ("global assessment of functioning scores of 50-60, which appear in Dr. Schemmel [sic] treatment notes <u>as well as</u> the consultative examination report, show only a moderate impairment in functioning"), and in justifying her decision to accord substantial weight to Dr. Blum's opinion ("the medical source statements of the State Agency medical consultant, Robert Blum PhD, set forth moderate limitations in some areas of functioning, which is [sic] consistent with the underlying global assessment of functioning scores").  (R. 20) (emphasis added).  Moreover, although the ALJ relied on GAF scores of "50-60" which she said "show only a moderate impairment in functioning" (R. 20), her analysis ignored two important factors.  First, she ignored that the GAF score range of 50-60 includes portions of two GAF ranges; 41-50, which relates to <u>serious impairment</u>, and 51-60 which relates to only <u>moderate impairment</u>.  Then, she failed to acknowledge that Dr. Schemmel, Dr. Mahar, Dr. Karim, and Dr. Skirchak, treating sources all, assessed GAF scores which were in the range of serious impairment, 41-50, and that Dr. Schemmel and Dr. Karim each assessed GAF scores of 43, which are within the lower third of that range.  An ALJ (and therefore the Commissioner) cannot have it both ways, she cannot rely upon GAF scores in the record which tend to support her decision, while at the same time ignoring those scores which detract from her decision.  And she cannot refuse to acknowledge that certain of the scores upon which she relied are

equivocal at best.  This is error requiring remand for the Commissioner to address all of the scores and to provide a proper basis for her evaluation of Dr. Schemmel's opinion.

The court also agrees with Plaintiff that the ALJ rejected Dr. Blum's opinion that Plaintiff is moderately limited in the ability to interact appropriately with the general public but failed explain the basis for doing so even though she purported to accord substantial weight to Dr. Blum's opinion.  If an ALJ's RFC assessment conflicts with a medical source opinion, she must explain why she did not adopt the opinion.  SSR 96-8p, West's Soc. Sec. Reporting Serv., Rulings 150 (Supp. 2013).  As the Commissioner acknowledges, the ALJ accorded significant weight to Dr. Blum's opinion.  (Comm'r Br. 7) (citing R. 20).  And, Dr. Blum opined that Plaintiff is moderately limited in the ability to interact appropriately with the general public.  (R. 456).  Yet, the only mental limitations assessed by the ALJ were that Plaintiff is "limited to understanding, remembering and completing simple work tasks."  (R. 17).  Moreover, the ALJ found that Plaintiff has only mild difficulties in social functioning.  (R. 16).  There is at least an ambiguity between the ALJ's determination to accord significant weight to Dr. Blum's opinion, and the fact that Dr. Blum found Plaintiff limited in his ability to interact with the public and the ALJ assessed no such limitation.  SSR 96-8p requires the ALJ to explain why she did not adopt Dr. Blum's opinion and to explain how she resolved the ambiguity between her assessment of RFC and her determination to accord significant weight to Dr. Blum's opinion.  West's Soc. Sec. Reporting Serv., Rulings 149 (Supp.

2013).  Because she did not do so, remand is necessary for the Commissioner to explain the decision properly.

**IT IS THEREFORE ORDERED** that the Commissioner's decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent herewith.

Dated this 19th day of August 2014, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**

13